UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| KAREN SAVAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| COMPREHENSIVE HEALTH ) | |
| MANAGEMENT, INC. EMPLOYEE ) | |
| BENEFIT WELFARE PLANS and ) | |
| LIBERTY LIFE ASSURANCE ) | |
| COMPANY OF BOSTON, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Now comes the Plaintiff, KAREN SAVAGE ("Savage" or "Plaintiff"), by her attorneys, NANCY L. CAVEY and the LAW OFFICE OF NANCY L. CAVEY, and MARK D. DEBOFSKY, MARIE E. CASCIARI, and DEBOFSKY, SHERMAN & CASCIARI, P.C., and complaining against the Defendants, COMPREHENSIVE HEALTH MANAGEMENT, INC. EMPLOYEE BENEFIT WELFARE PLANS ("Plan") and LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("Liberty") (collectively "Defendants"), states as follows:

## JURISDICTION

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), and in particular, ERISA § 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit

plans, which, in this case, specifically involves a long-term disability ("LTD") group insurance policy underwritten and administered by Liberty, which is part of the Plan, offered by Comprehensive Health Management, Inc. ("Comprehensive Health") for the benefit of its employees.

2. This action may also be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

3. The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for administrative or internal appeals of benefit denials and terminations. Those avenues of appeal have been exhausted.

## VENUE

4. Venue is proper in the Middle District of Florida, Tampa Division pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Comprehensive Health is headquartered in Tampa, Florida and the Plan was offered and administered in Tampa, Florida.

5. Venue is also proper in the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

## NATURE OF ACTION

6. This case seeks payment of LTD benefits due under a group disability insurance policy, group policy number GD/GF3-850-289016-01 ("Policy") (a true and correct copy of which is attached hereto and by that reference incorporated herein as

2

"Exhibit A"), which is a part of the Plan sponsored by Comprehensive Health, and underwritten and administered by Liberty, to provide LTD benefits to Comprehensive Health employees. This action is brought as a claim for benefits pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)).

## PARTIES

7. At all times relevant hereto, Plaintiff, who was born in 1962, is and was a resident of Melbourne, Florida located in Brevard County, Florida.

8. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to her employment with Comprehensive Health, Plaintiff received coverage under the Plan, and in turn the Policy, as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)). This claim relates to LTD benefits due under the foregoing Plan, which was offered and administered in Tampa, Florida.

9. At all times relevant hereto, Liberty was the underwriter and administrator of the Policy; and was doing business within the Middle District of Florida, Tampa Division.

## RELEVANT POLICY PROVISIONS

10. The Policy provides for LTD benefits, as well as short-term disability ("STD") benefits. Plaintiff was eligible to receive STD benefits starting February 18, 2014, following her satisfaction of the Policy's 7-day STD benefit elimination period, until August 11, 2014, the end of the maximum 25-week STD benefit period. Ex. A, at 4.

The provisions of the Policy relevant to Plaintiff's claim for STD benefits provide as follows:

### SECTION 4 – DISABILITY INCOME BENEFITS

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Weekly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

Ex. A, at 22.

### SECTION 2 -- DEFINITIONS

**"Disability"** or **"Disabled,"** with respect to Short Term Disability, means the Covered Employee, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of your Own Job.

Ex. A, at 8.

11. Plaintiff was also eligible to receive LTD benefits starting on August 12, 2014, following her satisfaction of the Policy's 180-day LTD benefit elimination period, and continuing through age 65, the end of the maximum LTD benefit period, which

would be reached in September 2027. Ex. A, at 5-6. Plaintiff is entitled to receive LTD benefits at the rate of 60% of her pre-disability monthly earnings of $4,587.75 per month, less other deductible sources of income, specifically Social Security disability benefits, in the amount of $1,640.00 per month, resulting in a net monthly LTD benefit of $2,947.75. The provisions of the Policy relevant to Plaintiff's claim for LTD benefits provide as follows:

### SECTION 4 – DISABILITY INCOME BENEFITS

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

Ex. A, at 29.

### SECTION 2 – DEFINITIONS

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

5

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i. **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

Ex. A, at 8-9.

## STATEMENT OF FACTS

12. Plaintiff was employed by Comprehensive Health as a full-time Senior Benefit Consultant, performing outside sales, starting August 15, 2011.

13. Plaintiff's occupation as a full-time Senior Benefit Consultant involved extensive travel and lifting/carrying/pushing/pulling up to 50 pounds at a time, which equates to medium work in the United States Department of Labor's *Dictionary of Occupational Titles*.

14. Approximately two and a half years into her employment with Comprehensive Health, Plaintiff ceased working effective February 11, 2014 due to a combination of severe impairments primarily including, but not limited to, systemic lupus erythematosus ("SLE"), fibromyalgia, and depression. Plaintiff has been unable to work in any capacity since that date.

15. Subsequent to ceasing her employment, Plaintiff submitted a claim for STD benefits under the Policy. Liberty approved Savage's STD benefit claim starting

February 18, 2014, following her satisfaction of the Policy's 7-day STD benefit elimination period, through August 11, 2014, the date she satisfied the Policy's 25-week maximum STD benefit period.

16. Subsequent to ceasing her employment, Plaintiff additionally submitted a claim for LTD benefits. Liberty approved Plaintiff's LTD benefit claim starting on August 12, 2014, following her satisfaction of the Policy's 180-day LTD benefit elimination period.

17. Liberty's initial decisions to approve Savage's STD and LTD benefit claims were based on three medical record reviews it obtained from doctors it hired – a neuropsychologist, a psychiatrist, and a rheumatologist – who all found that Savage had ongoing impairments and work restrictions due to depression, anxiety, SLE, fibromyalgia, osteoarthritis, and spinal degenerative disc disease.

18. In August 2014, Liberty initiated five days of covert surveillance, but Plaintiff was only seen on one day for about one minute while removing some light items from her car, thereby confirming that she was almost entirely inactive due to the severity of her medical condition.

19. Around that time, Plaintiff concurrently submitted a claim for Social Security disability benefits at Liberty's behest, and with the assistance of counsel to whom she was referred by Liberty, which was approved by the Social Security Administration ("SSA"). The SSA determined that Plaintiff was disabled due to SLE, fibromyalgia, and osteoarthritis, along with major depressive disorder and generalized anxiety disorder, beginning on February 10, 2014, thus signifying that her medical

condition resulted in her inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (definition of "disabled" under the Social Security Act). Plaintiff started receiving Social Security disability benefits as of August 2014, and continues to receive those benefits to this day.

20. Liberty financially benefits from Plaintiff's award of Social Security disability benefits because it reduces the amount of LTD benefits Liberty otherwise owes to Plaintiff based on coordination of benefits provisions in the Policy that lessen Liberty's LTD benefit payments by the amount of Social Security disability benefits paid to Plaintiff. Ex. A, at 29 & 38-39.

21. On December 20, 2016, approximately three years after approving Plaintiff's STD and LTD benefit claims, and despite the absence of any material improvement in her medical condition, Liberty notified Plaintiff that it no longer deemed her disabled and was terminating her LTD benefits effective December 15, 2016.

22. Liberty's benefit termination was based exclusively on the results of two unreliable file reviews performed by frequently-retained doctors who never examined Plaintiff. The reviews were cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the termination of benefits while ignoring the overwhelming contrary evidence.

23. On June 16, 2017, Plaintiff appealed Liberty's decision to terminate her LTD benefits through the undersigned counsel, and submitted additional medical evidence further supporting her ongoing total disability.

24. On July 20, 2017, Liberty notified Plaintiff that it was upholding its prior termination of her LTD benefits.

25. Liberty's decision to deny Plaintiff's appeal was once again based exclusively on the results of two unreliable file reviews performed by frequently-retained doctors who also never examined Plaintiff. The reviews were cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the termination of benefits while ignoring the overwhelming contrary evidence. The file reviewers, and the entire structure of Liberty's claim appeal process, were biased and self-serving, and placed financial considerations ahead of performing an objective and fair claim evaluation. Liberty thus failed to meet its fiduciary obligations under ERISA to provide Plaintiff with an accurate claim decision and to utilize "higher-than-marketplace quality standards" as required by the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350 (2008); and to provide Plaintiff with a "full and fair review" as required by ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

26. All required pre-litigation appeals seeking the payment of LTD benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

27. As a result of Plaintiff's various severe medical impairments, she remains unable to return to any full-time work. The evidence submitted to Liberty establishes that Plaintiff has been continuously unable to return to work in any capacity since she first ceased working effective February 11, 2014, and has thus met and continues to meet the Policy's definition of disability for LTD benefits since that date. Plaintiff is therefore

terms of the Policy for so long as Plaintiff continues to meet the Policy's terms and conditions for the receipt of benefits.

### RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendants, and that the Court order Defendants to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B. That the Court order Defendants to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment at an appropriate rate pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

C. That the Court order Defendants to continue to pay Plaintiff LTD benefits so long as she continues to meet the Policy's terms and conditions;

D. That the Court award Plaintiff attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E. That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which she may be entitled.

Dated: September 20, 2017                                Respectfully submitted,

/s/ Nancy L. Cavey

_____
Nancy L. Cavey
Local Counsel for Plaintiff
Karen Savage

Nancy L. Cavey
Local Counsel for Plaintiff
Karen Savage

/s/ Mark D. DeBofsky

_____

Mark D. DeBofsky
Trial Counsel for Plaintiff
Karen Savage

Nancy L. Cavey (local counsel)
Florida Bar Number: 300934
Law Office of Nancy L. Cavey
821 16th Street North
St. Petersburg, Florida 33705
Voice: (727) 894-3188
Fax: (727) 821-2751
Email: cavey@tampabay.rr.com

Mark D. DeBofsky (seeking *pro hac vice* admission)
Marie E. Casciari (seeking *pro hac vice* admission)
DeBofsky, Sherman & Casciari, P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
Voice: (312) 561-4040
Fax: (312) 929-0309
Email: mdebofsky@debofsky.com
Email: mcasciari@debofsky.com